IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-01436-PAB-SBP

WILLIAM KOSTROUN,

     Plaintiff,

v.

GREENHOUSE PARTNERS, LLC,

     Defendant.

---

## ORDER

---

     This matter is before the Court on Plaintiff's Amended Motion for Default

Judgment [Docket No. 14].[1]

---

[1] On October 8, 2024, plaintiff filed a motion titled "Plaintiff's Motion for Default Judgment." Docket No. 12. However, as the Court explained in its order denying the motion, "Mr. Kostroun's motion asks the Court to 'take notice' of the fact that he 'intends to move the Court for an entry of default judgment against defendant Greenhouse Partners, LLC ('Defendant') at the United States Courthouse, 901 19th Street, Denver, CO 80294, at a time and place to be set by the Court.' The motion does not ask the Court to enter judgment against Greenhouse Partners, LLC pursuant to Federal Rule of Civil Procedure 55(b), and it does not show that Mr. Kostroun is entitled to default judgment." Docket No. 13 at 1 (citations omitted). The Court therefore denied the motion without prejudice and ordered plaintiff to file an amended motion for default judgment. *Id.* at 2. Plaintiff filed an amended motion for default judgment on November 4, 2024. Docket No. 14. Plaintiff's amended motion does not comply with the Court's practice standards because plaintiff has filed the amended motion and a brief in support of his motion separately. *See* Docket No. 14; Docket No. 14-1; Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.A. ("Motions and briefs shall be combined"). However, for the reason discussed below, the Court finds that plaintiff is entitled to default judgment, and further delay caused by plaintiff amending his motion for a second time is unnecessary.

## I.    BACKGROUND[2]

Plaintiff William Kostroun is a professional photographer.  Docket No. 1 at 2,

¶ 10.  Mr. Kostroun has obtained active and valid copyright registrations from the United

States Copyright Office ("USCO"), which cover many of his photographs.  *Id.*, ¶ 12.  On

September 9, 2017, Mr. Kostroun first published a photograph of Andrea Pirlo in a

soccer match.  *Id.* at 1, 2, ¶¶ 2, 14; Docket No. 1-1.  Mr. Kostroun created the

photograph with the intention of it being used commercially and for the purpose of

display and public distribution.  Docket No. 1 at 3, ¶ 17.  On September 18, 2017, the

photograph was registered by the USCO under Registration No. VA 2-068-745.  *Id.*,

¶ 16.

Defendant Greenhouse Partners, LLC ("Greenhouse") is a media company that

is the registered owner and operator of a website with the domain name "the18.com."

*Id.* at 1, 3, ¶¶ 3, 18-19.  As the owner and operator of the18.com, Greenhouse is

responsible for the website's contents.  *Id.* at 3, ¶¶ 18-19.  The website is a key

component of Greenhouse's business and contains paid advertisements.  *Id.*, ¶¶ 20-21.

On or about September 13, 2017, Greenhouse displayed the photograph of Mr. Pirlo on

the18.com as part of an online article available at https://the18.com/en/soccer-news/fifa-

18-mls-player-ratings.  *Id.*, ¶ 22.  The photograph was stored at the Uniform Resource

Locator ("URL"):

https://the18.com/sites/default/files/styles/feature_image_with_focal/public/feature-

images/20170913-The18-Image-Andrea-Pirlo-Kaka-1280x720.jpeg?itok=K5wSwNiX.

---

[2] Because of the Clerk of Court's entry of default, Docket No. 10, the well-pled allegations in plaintiff's complaint, Docket No. 1, are deemed admitted.  *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).

*Id.* at 3, 4, ¶¶ 23, 27.  Defendant copied and displayed the photograph without Mr.
Kostroun's permission or authorization.  *Id.* at 1, 6, ¶¶ 4, 56.  The image displayed on
the18.com is a copy of the majority of Mr. Kostroun's original photograph.  *Id.* at 4, ¶ 28.

Mr. Kostroun discovered that Greenhouse had copied and displayed the
photograph on April 11, 2022.  *Id.* at 3, ¶ 25.  On March 1, 2023, Mr. Kostroun sent
Greenhouse a letter seeking to address the unauthorized use of the photograph.  *Id.* at
6, ¶ 48.  Greenhouse did not respond.  *Id.*, ¶ 49.  Despite notice by Mr. Kostroun,
Greenhouse continues to infringe on Mr. Kostroun's work.  *Id.*, ¶ 50.

On May 22, 2024, Mr. Kostroun filed this case, bringing one claim of copyright
infringement under 17 U.S.C. § 501.  *Id.* at 6-7, ¶¶ 52-61.  The complaint seeks a
declaratory judgment that Greenhouse infringed on Mr. Kostroun's copyright; an award
of actual damages and disgorgement of all of Greenhouse's profits attributable to the
infringement or, in the alternative, statutory damages for the infringement; attorney's
fees; prejudgment interest; and a permanent injunction enjoining Greenhouse from
infringing on Mr. Kostroun's copyright.  *Id.* at 7-8.  On May 31, 2024, Mr. Kostroun
served Greenhouse through its registered agent CT Corporations System.  Docket No.
8.  On August 7, 2024, the Clerk of Court entered default against Greenhouse.  Docket
No. 10.  On November 4, 2024, Mr. Kostroun filed the instant motion for default
judgment.  Docket No. 14.

## II.   LEGAL STANDARD

In order to obtain a judgment by default, a party must follow the two-step process
described in Fed. R. Civ. P. 55.  First, the party must seek an entry of default from the
Clerk of the Court under Rule 55(a).  Second, after default has been entered by the
Clerk, the party must seek judgment under the strictures of Rule 55(b).  *See Williams v.*

3

*Smithson*, 57 F.3d 1081, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (unpublished

table decision) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "committed to the district court's sound

discretion." *Olcott*, 327 F.3d at 1124 (citation omitted). In exercising that discretion, the

Court considers that "[s]trong policies favor resolution of disputes on their merits." *In re

Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation and citations omitted). "The

default judgment must normally be viewed as available only when the adversary

process has been halted because of an essentially unresponsive party." *Id.* Default

judgment serves to protect a plaintiff against "interminable delay and continued

uncertainty as to his rights." *Id.* at 733. When "ruling on a motion for default judgment,

the court may rely on detailed affidavits or documentary evidence to determine the

appropriate sum for the default judgment." *Seme v. E&H Prof'l Sec. Co., Inc.*, No. 08-

cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence. *See Cessna

Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir.

1983) ("[A] workable system of justice requires that litigants not be free to appear at

their pleasure. We therefore must hold parties and their attorneys to a reasonably high

standard of diligence in observing the courts' rules of procedure. The threat of

judgment by default serves as an incentive to meet this standard."). One such

consequence is that, upon the entry of default against a defendant, the well-pleaded

allegations in the complaint are deemed admitted. *See* 10A Charles Alan Wright &

Arthur R. Miller, *Federal Practice & Procedure* § 2688.1 (4th ed., 2022 rev.). "Even after

default, however, it remains for the court to consider whether the unchallenged facts

constitute a legitimate cause of action, since a party in default does not admit

conclusions of law." *Id*.  A court need not accept conclusory allegations.  *Moffett v.*

*Halliburton Energy Servs., Inc.,* 291 F.3d 1227, 1232 (10th Cir. 2002).  Although

"[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551

U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007)), the well-pleaded facts must "permit the court to infer more than the mere

possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and

alterations omitted).  Thus, even though modern rules of pleading are somewhat

forgiving, "a complaint still must contain either direct or inferential allegations respecting

all the material elements necessary to sustain a recovery under some viable legal

theory."  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and

citation omitted).

　　　　To obtain a default judgment for a sum certain, the plaintiff must show the

following by affidavit.  First, that the party in default is (1) not a minor or an incompetent

person, (2) is not in military service, and (3) has not made an appearance.

D.C.COLO.LCivR 55.1(a)(1).  Second, that the sum is certain or the sum can be made

certain by computation.  D.C.COLO.LCivR 55.1(a)(2).  Additionally, the plaintiff must

submit a proposed form of judgment that shows (1) the party in favor of whom judgment

shall be entered, (2) the party against whom judgment shall be entered, (3) the sum

certain amount consisting of the principal amount, prejudgment interest, and the rate of

post judgment interest, and (4) the sum certain of attorney fees.  D.C.COLO.LCivR

55.1(b).

III.    **ANALYSIS**

    A.  **Jurisdiction**

Before entering default judgment, the Court must determine whether it has subject matter jurisdiction over the case and personal jurisdiction over the defendant. *See Dennis Garber & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (holding that "a district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case").

        *1.  Subject Matter Jurisdiction*

Mr. Kostroun states that the Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).  Docket No. 1 at 2, ¶ 7.  Pursuant to 28 U.S.C. § 1331, the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Pursuant to 28 U.S.C. § 1338(a), the "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."  The Court therefore has subject matter jurisdiction over Mr. Kostroun's copyright claim pursuant to 28 U.S.C. § 1331 because the claim arises under federal law.  Furthermore, 28 U.S.C. § 1338(a) gives the Court original jurisdiction over any civil action relating to copyrights.

        *2.  Personal Jurisdiction*

Mr. Kostroun bears the burden of establishing personal jurisdiction.  *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).  Mr. Kostroun can satisfy his burden by making a prima facie showing.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  The Court will accept the well-pled allegations of

6

the complaint as true in determining whether plaintiff has made a *prima facie* showing that personal jurisdiction exists. *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further. *Id.* The plaintiff, however, may also make this *prima facie* showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant. *Id.*

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). Because "neither the federal Copyright Act, 17 U.S.C. § 101 *et seq.,* nor the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq,* provides for nationwide service of process, . . . Fed. R. Civ. P. 4(k)(1)(A) commands the district court . . . to apply the law of the state in which the district court sits." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent permitted by the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process. *See id.*; *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005). Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that assuming jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*,

326 U.S. 310, 316 (1945).  Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction.  *Howarth v. TCER, LLC*, 20-cv-03230-PAB-KMT, 2021 WL 4775270, at *2 (D. Colo. Oct. 13, 2021).

Furthermore, proper service is a jurisdictional prerequisite to litigation.  *Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998) ("Effectuation of service is a precondition to suit.").  Without proper service, the Court lacks personal jurisdiction over a defendant.  *Okla. Radio Assocs. v. Fed. Deposit Ins. Corp.*, 969 F.2d 940, 943 (10th Cir. 1992).

### a.  Service of Process

Here, Greenhouse is a limited liability company.  Docket No. 1 at 2, ¶ 6.  Federal Rule of Civil Procedure 4(h) governs the service of processes on limited liability companies.  *See Avus Designs, Inc. v. Grexxx, LLC*, 644 F. Supp. 3d 963, 973 (D. Wyo. 2022) ("The Court analyzes adequacy of service of process on an LLC in the context of Fed. R. Civ. P. 4(h), which establishes service of process for a corporation, partnership, or association.").  Rule 4(h)(1)(B) provides that a plaintiff may serve process on an unincorporated association "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1)(B); *see also Howarth*, 2021 WL 4775270, at *3.  "The purpose of Rule 4(h) is to ensure that when a litigant serves process on a [limited liability company], the process is delivered to a person of sufficient rank and control in the [company] such that the court can be reasonably assured that those . . . officials responsible for responding to the suit will actually be apprised of its pendency."  *Howarth*, 2021 WL 4775270, at *3 (quoting

8

*Inversora Murten SA v. Energoprojekt Holding Co*., No. 06-cv-02312-MSK, 2009 WL

179463, at *4 (D. Colo. Jan. 22, 2009)).

In the alternative, a plaintiff may serve a limited liability company "in the manner

prescribed by Rule 4(e)(1) for serving an individual."  Fed. R. Civ. P. 4(h)(1)(A).  Rule

4(e)(1) allows service to be made "following state law" for either the state where the

district court is located or where service is made.  Under Colorado law, a plaintiff can

effectuate service on a limited liability company by delivering a copy of the summons

and complaint to "the registered agent for service as set forth in the most recently filed

document in the records of the secretary of state of [Colorado] or of any other

jurisdiction, or that agent's secretary or assistant."  Colo. R. Civ. P. 4(e)(4); *see also*

*Lodos v. Empire Towing Corp*., No. 22-cv-01790-PAB-SBP, 2024 WL 98386, at *5 (D.

Colo. Jan. 9, 2024).  "A registered agent may be served in the same manner as a

natural person, that is, 'at the person's usual workplace, with the person's secretary,

administrative assistant, bookkeeper, or managing agent.'"  *Barak v. Rooster's Guide &*

*Outfitting Adventures*, No. 19-cv-03556-RM-GPG, 2020 WL 9424264, at *3 (D. Colo.

Apr. 28, 2020) (quoting *Goodman v. Assocs., LLC v. WP Mountain Props., LLC*, 222

P.3d 310, 316 (Colo. 2010)).  In *Goodman*, the Colorado Supreme Court explained that

"the rule provides that service is sufficient if delivery is made to an assistant who

performs clerical duties for the person to be served" and that "the rule ensures that

service is made on an employee who reports to that person."  *Goodman*, 222 P.3d at

317.  "Beyond ascertaining that an employee falls within an appropriate category ('the

person's secretary, administrative assistant, bookkeeper, or managing agent'), a

process server is not required to determine that the individual will in fact give the papers to the named individual or agent." *Id.*

On May 31, 2024, Mikayla Kranzuska was served by Mr. Kostroun's process server at 7700 East Arapahoe Rd., Centennial, Colorado 80112. Docket No. 8. The affidavit of service identifies Ms. Kranzuska as a "clerk . . . at [the] office of respondent's registered agent – CT Corporation System." *Id.* Records from the Colorado Secretary of State's website confirm that CT Corporation System is Greenhouse's registered agent. *See* Colo. Sec'y State, *Business Database Search*, www.sos.state.co.us/biz/BusinessEntityCriteriaExt.do (last visited Apr. 30, 2025); *see also Norwood v. Quick*, 2025 WL 1174627, at *1 n.1 (W.D. Okla. Mar. 21, 2025), *report and recommendation adopted*, 2025 WL 1173403 (W.D. Okla. Apr. 22, 2025) ("The Court may take judicial notice of public records, including the public records of state agencies." (citing *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1213 (10th Cir. 2012) ("The contents of an administrative agency's publicly available files . . . traditionally qualify for judicial notice."))). The Secretary of State's records further identify CT Corporation System's address as the same Centennial address where Ms. Kranzuska was served. Because the affidavit of service identifies Ms. Kranzuska as a clerk, who would therefore perform clerical duties for CT Corporation System, the Court finds that Mr. Kostroun has demonstrated that he properly served Greenhouse's registered agent. *See Goodman*, 222 P.3d at 317; *see also PMW, LLC v. ANKC San Francisco, LLC*, No. 23-cv-02785-PAB-STV, 2024 WL 4267878, at *5 (D. Colo. Sept. 23, 2024) (finding service of process was proper under Rule 4(h) where plaintiff served the defendant LLC's registered agent (citing *Avus Designs*, 644 F. Supp. 3d at 973).

###### b.  Due Process

"In determining whether a federal court has personal jurisdiction over a

defendant, the court must determine (1) whether the applicable statute potentially

confers jurisdiction by authorizing service of process on the defendant and (2) whether

the exercise of jurisdiction comports with due process."  *Trujillo*, 465 F.3d at 1217

(quoting *Peay*, 205 F.3d at 1209).  The Court will consider first whether it can exercise

general jurisdiction over Greenhouse.  General jurisdiction extends to "any and all

claims" brought against a defendant, including claims that have no relation to the forum

state.  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)

(citation omitted).  A court may exercise general jurisdiction only when a defendant is

"essentially at home" in the state.  *Id.*  "An LLC is 'at home' in its state of organization

and is therefore subject to general personal jurisdiction within that state consistent with

the Due Process Clause."  *Columbia Cas. Co. v. Valor Health Network, LLC*, No. 23-cv-

00998-CNS-STV, 2024 WL 3597180, at *5 (D. Colo. July 31, 2024) (citing *Avus Design*,

644 F. Supp. 3d at 978 (citing *Dailmer AG v. Bauman*, 571 U.S. 117, 139 (2014))).  An

LLC is also "at home" in the state of its principal place of business.  *Daimler*, 571 U.S. at

123 (treating Daimler's USA subsidiary, an LLC, as at home in the states where it was

organized and had its principal place of business); *Allen v. IM Sols., LLC*, 83 F. Supp.

3d 1196, 1204 (E.D. Okla. 2015) ("As a limited liability company organized under the

laws of Nevada and having its principal place of business in Texas, it would be 'at

home' in those two states."); *Snider v. Pilot Travel Centers, LLC*, 2023 WL 3092884, at

*1, *2 n.1 (D.N.M. Apr. 26, 2023) (holding that corporations "are usually 'at home' only in

their state of incorporation and their principal place of business" and that, "[a]lthough

Pilot is an LLC, it is treated like any other corporation for the purpose of general personal jurisdiction").

Mr. Kostroun's motion does not address the Court's personal jurisdiction over Greenhouse.  Docket No. 14; Docket No. 14-1.  The complaint alleges that "defendant Greenhouse Partners, LLC, is a Colorado limited liability company with a principal place of business at 1820 Folsom Street, Boulder in Boulder County, Colorado."  Docket No. 1 at 2, ¶ 6.  However, the records from the Colorado Secretary of State's website state that Greenhouse Partners, LLC is a foreign limited liability company whose home jurisdiction is Delaware.  *See* Colo. Sec'y State, *Business Database Search*, www.sos.state.co.us/biz/BusinessEntityCriteriaExt.do (last visited Apr. 30, 2025). Therefore, the Court does not accept as true Mr. Kostroun's allegation that Greenhouse is a Colorado limited liability company.  Nevertheless, both the complaint and records from the Colorado Secretary of State identify Greenhouse's principal place of business to be located at 1820 Folsom Street, Boulder, Colorado.  *Id.*  Accordingly, Greenhouse is at home in Colorado, and the Court can exercise general jurisdiction over Greenhouse in this case.  Therefore, the Court has general jurisdiction over this case and can exercise personal jurisdiction over Greenhouse.

## B. Merits

To enter default judgment against Greenhouse, the Court must find that Greenhouse, based on the material allegations in the complaint, is liable for copyright infringement.  The Copyright Act gives copyright owners the exclusive right to make copies and derivative works and gives copyright owners a cause of action against anyone who violates the rights of the owner.  17 U.S.C. §§ 106, 501.  To succeed on a copyright infringement action, two elements must be met: (1) the plaintiff has a valid

copyright and (2) defendant copied the plaintiff's original work.  *La Resolana Architects,*

*PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009) (citing *Feist Publ'ns, Inc. v.*

*Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

      Mr. Kostroun sufficiently alleges that he owns the copyright on the photograph.

Mr. Kostroun alleges he first published the photograph on September 9, 2017.  Docket

No. 1 at 2, ¶ 14.  He alleges that his copyright on the photograph was registered on

September 18, 2017 with the USCO, Registration No. VA 2-068-745.  *Id.* at 3, ¶ 16.  Mr.

Kostroun also attaches to his motion for default judgment a copy of the registration on

file with the USCO.  *See* Docket No. 14-5.

      Mr. Kostroun alleges that Greenhouse began publicly displaying the photograph

on September 13, 2017.  Docket No. 1 at 3, ¶ 22.  Although Greenhouse began

exhibiting the photograph on its website prior to the photograph's registration with the

USCO, § 412 of the Copyright Act provides that statutory damages are available in an

infringement action when the "infringement of copyright commenced after first

publication of the work and before the effective date of its registration, [and] such

registration is made within three months after the first publication of the work."  17

U.S.C. § 412(2); *Amador v. McDonald's Corp.*, 601 F. Supp. 2d 403, 409 (D.P.R. 2009)

("However, in order to recover statutory damages and attorney's fees, the copyrighted

work must have been registered prior to commencement of the infringement, unless the

registration is made within three months after first publication of the work.").  Here, Mr.

Kostroun registered his photograph nine days after its first publication, and statutory

damages are available in this case.  *See McGlynn v. Cools, Inc.*, 2020 WL 6561658, at

*7 (S.D.N.Y. July 1, 2020), *report and recommendation adopted*, 2020 WL 5525745

(S.D.N.Y. Sept. 15, 2020) ("Specifically, based on Plaintiff's statements and attached documentation, the Court accepts that the Photograph was first published on March 13, 2019, and that the effective date of Plaintiff's copyright registration was March 27, 2019, well within the three-month grace period." (internal citation omitted)).  Therefore, the fact that the infringement began before the photograph was registered does not impact the Court's analysis.

Mr. Kostroun sufficiently alleges that Greenhouse used the photograph. Specifically, Mr. Kostroun alleges that Greenhouse began publicly displaying the photograph on its website as part of an online article on September 13, 2017.  Docket No. 1 at 3, ¶ 22.  Mr. Kostroun attaches copies of the original photograph and an image capture of Greenhouse's website displaying a central portion of Mr. Kostroun's photograph.  *See* Docket No. 1-1; Docket No. 1-2.  Accordingly, the Court finds that Mr. Kostroun sufficiently states a claim for copyright infringement under 17 U.S.C. § 501.

### C.  Damages

Default judgment requires the Court to ascertain the amount of damages.  *See Reg'l Dist. Council v. Mile High Rodbusters, Inc.,* 82 F. Supp. 3d 1235, 1243 (D. Colo. 2015) (citing *Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984)).  The court must hold a hearing on the damages claimed before entering default judgment, unless "the amount claimed is a liquidated sum or one capable of mathematical calculation."  *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985).  "Actual proof must support any default judgment for money damages where there is an uncertainty as to the amount."  *Mile High Rodbusters, Inc.,* 82 F. Supp. 3d at 1243 (citing *Klapprott v. United States*, 335 U.S. 601, 611-12 (1949)).  "While the Court accepts the well-pleaded facts of the complaint as true on a motion for default judgment, allegations relating to

the amount of damages are generally not accepted as true." *First Home Bank v. USA Pro Roofing & Constr., LLC*, No. 18-cv-00965-MSK-STV, 2018 WL 6990394, at *3 (D. Colo. Oct. 19, 2018); *see also United States v. Craighead*, 176 F. App'x 922, 925 (10th Cir. 2006) (unpublished). "In making an independent determination of the amount of damages, the court may rely on detailed affidavits or documentary evidence." *BMO Harris Bank N.A. v. Marjanovic*, No. 19-cv-02945-CMA-KMT, 2021 WL 307501, at *4 (D. Colo. Jan. 29, 2021) (citations and quotation omitted).

The victim of copyright infringement is entitled to actual damages, including any profits of the infringer, or to statutory damages. 17 U.S.C. § 504(a). Section 504 states, in relevant part:

> (b) Actual Damages and Profits . . . The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

> (c) Statutory Damages. . .

> > (1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

17 U.S.C. § 504. In his complaint, Mr. Kostroun asks for "an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at

Plaintiff's election, an award for statutory damages against Defendant for each infringement pursuant to 17 U.S.C. § 504(c), whichever is larger." Docket No. 1 at 8. In his motion for default judgment, Mr. Kostroun asks that Greenhouse be ordered "to pay $30,000.00 in statutory damages under 17 U.S.C. § 504(c) for willful copyright infringement." Docket No. 14 at 1. Therefore, Mr. Kostroun has elected a statutory award.

The Court has the discretion to award statutory damages ranging from $750 to $30,000, and up to $150,000 if the infringement was committed willfully, for "all infringements involved in the action, with respect to any one work." 17 U.S.C. § 504(c)(1)-(2). "An infringer is liable for the number of original works infringed, not for the number or type of copies made." *Arclightz & Films Pvt. Ltd. v. Video Palace Inc.*, 303 F. Supp. 2d 356, 361 (S.D.N.Y. 2003). Here, Mr. Kostroun alleges that one of his copyrighted works was infringed. *See* Docket No. 1 at 1, ¶ 4.

Mr. Kostroun argues that, because Greenhouse has failed to appear, Greenhouse's infringement should be deemed willful. Docket No. 14-1 at 5 (citing *Chloe v. Zarafshan*, 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009) ("Willfulness may be established by a party's default because an innocent party would presumably have made an effort to defend itself.")). Mr. Kostroun cites a series of unpublished cases from other federal courts where the court granted an award of statutory damages of $30,000 without requiring the plaintiff to produce proof of lost licensing fees. *Id.* at 4-5 (citing *Pena v. One Gods Way Media, LLC*, No. 23-cv-01392, Docket No. 13 (N.D. Tex. Jan. 31, 2024); *Trinkhaus v. Nativity Tours and Travel Inc.*, No. 22-cv-03156, Docket No. 17 (S.D. Tex, Nov. 28, 2023)).

"Statutory damages are not designed to be merely compensatory or restitutionary, but are also meant to discourage wrongful conduct." *Clever Covers, Inc. v. Sw. Fla. Storm Def., LLC*, 554 F. Supp. 2d 1303, 1311 (M.D. Fla. 2008) (citing *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 113-14 (2d Cir. 2001)).  However, statutory damages "'are not intended to provide a plaintiff with a windfall recovery'; they should bear some relationship to the actual damages suffered."  *Id.* at 1312-13 (quoting *Peer Int'l Corp. v. Luna Records,* 887 F. Supp. 560, 568-69 (S.D.N.Y. 1995)).  "Courts consider the following factors in determining an award of statutory damages: (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties."  *McDermott v. Light the Region Media LLC*, 707 F. Supp. 3d 264, 272-73 (W.D.N.Y. 2023) (quoting *Malibu Media, LLC v. Rios*, 2021 WL 942737, at *3 (S.D.N.Y. Mar. 11, 2021)); *see also Adventure Creative Grp., Inc. v. CVSL, Inc.*, 412 F. Supp. 3d 1065, 1072-73 (D. Minn. 2019) (citing *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 374 (S.D.N.Y. 2019)).

In cases involving "a single-use copyright infringement," federal courts "have typically awarded statutory damages between $1,000 and $5,000."  *McDermott*, 707 F. Supp. 3d at 273; *see also Verch v. Blockchain Techs. Corp.*, 2021 WL 1198784, at *2 (S.D.N.Y. Mar. 30, 2021) (citing *Hirsch v. Sell It Social, LLC*, 2020 WL 5898816, at *5 (S.D.N.Y. Oct. 5, 2020) (awarding $5,000 in statutory damages for a single use infringement where plaintiff had not presented evidence of licensing fee history or actual losses); *Idir v. La Calle TV, LLC*, 2020 WL 4016425, at *3 (S.D.N.Y. July 15, 2020)

(awarding $2,500 in statutory damages where "the need to deter such conduct justifies

an award greater than the minimum of $750, but a higher award is not warranted where

there is no evidence of actual losses or additional evidence of willfulness on the part of

the defendant"); *Verch v. Sea Breeze Syrups, Inc.*, 2020 WL 7407939, at *4 (E.D.N.Y.

Aug. 20, 2020) (awarding $1,000 in statutory damages where "there is only one alleged

act of infringement, there are no cease-and-desist letters, there are no requests for

injunctive relief, the usual licensing fee has not been provided, and there is no evidence

of actual harm")).  "While courts award more damages when the defaulting defendant is

found to have willfully infringed the plaintiff's copyright, these awards still 'tend to be at

the lower end.'"  *McDermott*, 707 F. Supp. 3d at 273 (citing *Stokes v.*

*MilkChocolateNYC LLC*, 681 F. Supp. 3d 226, 241 (S.D.N.Y. 2023) (collecting cases

with awards ranging from $7,500 to $20,000 per photograph)).  However, some federal

courts have found that, when the defendant's infringement is willful, an award of over

$30,000 is necessary to provide appropriate deterrence.  *Clever Covers*, 554 F. Supp.

2d at 1312-13 (awarding $31,000 in statutory damages because defendant's

infringement was willful); *Zomba Enters., Inc. v. Panorama Recs., Inc.*, 491 F.3d 574,

586 (6th Cir. 2007) (finding that district court did not abuse its discretion in awarding

$31,000 in statutory damages because the district court concluded that the "maximum

penalty for nonwillful infringement was *not sufficient* given Panorama's conduct"); *see*

*also Jitrade, Inc. v. Design of Dk, Inc.*, 2018 WL 6133653, at *4 (C.D. Cal. July 26,

2018) (granting plaintiff's request for $30,000 in statutory damages because defendant's

conduct was willful); *Getaped.Com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 403

(S.D.N.Y. 2002) ("plaintiff's request for $30,000 in statutory damages is reasonable and appropriate" considering defendant's willful infringement).

 "To prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." *Broad. Music, Inc. v. Buffalo Wing Joint & Pub, LLC*, 431 F. Supp. 3d 147, 155 (W.D.N.Y. 2019) (quoting *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)). Here, the complaint alleges that Greenhouse is a sophisticated media company that profits from its website, the18.com, through advertising. Docket No. 1 at 1, 3-5, ¶¶ 3, 21, 36. The complaint alleges that, despite being contacted by Mr. Kostroun through his attorney, Greenhouse continues to infringe on Mr. Kostroun's copyright. *Id.* at 6, ¶ 50. Moreover, the Court has found that Greenhouse has been properly served and has failed to appear in this case.

 Greenhouse's failure to respond either to Mr. Kostroun's letter or to this action suggests that its infringement is willful. *See McDermott*, 707 F. Supp. 3d at 273 ("The Court finds that Defendant's infringing conduct was willful based not only on its failure to appear, but also because Plaintiff notified Defendant of its infringing conduct twice before filing this action."). The fact, however, that Greenhouse first displayed Mr. Kostroun's photograph before it was registered with the USCO supports an inference that Greenhouse's infringement was not willful. Nevertheless, the complaint alleges that Greenhouse is a media company that uses photographs like Mr. Kostroun's as part of the monetized content it publishes on the internet. Docket No. 1 at 1, 3, ¶¶ 3, 18-21. The photograph was registered with the USCO days after Greenhouse first posted the

article infringing on Mr. Kostroun's copyright. *Id.* at 3, ¶¶ 16, 22. Mr. Kostroun put

Greenhouse on notice that it was infringing his copyright, but Greenhouse has not

withdrawn the infringing article. *Id.* at 6, ¶ 50. These allegations support an inference

that, even if Greenhouse's infringement was not initially intentional, its continued

violation was the result of reckless disregard for Mr. Kostroun's rights. *See Broad.*

*Music*, 431 F. Supp. 3d at 155; *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 375

(S.D.N.Y. 2019), *aff'd*, 970 F.3d 167 (2d Cir. 2020) (considering "whether the infringer

was on notice that the copyrighted work was protected; whether the infringer had

received warnings of the infringements; [and] whether the infringer had experience with

previous copyright ownership, prior lawsuits regarding similar practices, or work in an

industry where copyright is prevalent" when evaluating defendant's willfulness (quoting

*Agence France Presse v. Morel*, 934 F. Supp. 2d 547, 570 (S.D.N.Y. 2013)). Taken

together, the allegations in the complaint are sufficient to demonstrate that

Greenhouse's violation of Mr. Kostroun's copyright was "willful" under the Copyright Act.

*McDermott*, 707 F. Supp. 3d at 273. Therefore, Greenhouse's state of mind weighs in

favor of a substantial award of statutory damages.

   The public has a "strong interest in maintaining the integrity of copyright laws."

*Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1218 (W.D. Wash. 2014). Courts

in copyright cases have "a duty under the relevant case law to put Defendants 'on

notice that it costs less to obey the copyright laws than to violate them.'" *EMI Apr.*

*Music Inc. v. Jet Rumeurs, Inc.*, 632 F. Supp. 2d 619, 625-26 (N.D. Tex. 2008) (quoting

*Int'l Korwin Corp. v. Kowalczyk*, 855 F. 2d 375, 383 (7th Cir. 1988)). As such, the

deterrent effect on Greenhouse and third parties also weighs in favor of a substantial

award.

Mr. Kostroun has provided the Court with no evidence of Greenhouse's

expenses saved or profits earned from the infringement, or of the revenue lost by Mr.

Kostroun.  *See* Docket No. 14; Docket No. 14-1.  Although Mr. Kostroun may have no

practical way of proving Greenhouse's profits from the infringement, Mr. Kostroun

possesses relevant information regarding his own licensing practices.  Mr. Kostroun has

not provided such information in support of his motion.  As such, the Court lacks the

ability to ensure that the award of statutory damages "bear[s] some relationship to the

actual damages suffered" and is not a windfall recovery to Mr. Kostroun.  *Clever*

*Covers*, 554 F. Supp. 2d at 1312-13.  Therefore, the second, third, fifth, and sixth

considerations identified in *McDermott* weigh in favor of a smaller award of damages.

*McDermott*, 707 F. Supp. 3d at 272-73 (considering "(2) the expenses saved, and

profits earned, by the infringer; (3) the revenue lost by the copyright holder; . . . (5) the

infringer's cooperation in providing evidence concerning the value of the infringing

material; and (6) the conduct and attitude of the parties").  Moreover, although the

complaint alleges that the article displaying Mr. Kostroun's photograph remains on the

internet, the complaint alleges that Greenhouse has infringed only one of Mr. Kostroun's

photographs in one online article.  Docket No. 1 at 3, 6, ¶¶ 22, 50.  This single-use

copyright infringement also weighs in favor of a smaller award of statutory damages.

*See McDermott*, 707 F. Supp. 3d at 273 (statutory awards for "a single-use copyright

infringement" "tend to be at the lower end").

Considering the allegations in the complaint, and the evidence Mr. Kostroun has produced and has failed to produce in his motion for default judgment, the Court finds that an award of $7,500 is sufficient but not greater than necessary to compensate Mr. Kostroun and to deter Greenhouse or other potential users of Mr. Kostroun's photographs from future infringement.  *See Sadowski v. Yeshiva World News, LLC*, 2023 WL 2707096, at *7 (E.D.N.Y. Mar. 16, 2023), *report and recommendation adopted*, 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023) (awarding $7,500 in statutory damages for willful infringement of a single photograph in an online article).

### D. <u>Attorney's Fees</u>

The Court "may . . . award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.  "[A]ttorney's fees are to be awarded to the prevailing parties only as a matter of the court's discretion."  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 1033 (1994).  There is no "precise rule or formula" for determining whether fees should be awarded.  *Id*.  However, the Supreme Court has endorsed four non-exhaustive factors to consider: frivolousness, motivation, objective unreasonableness, and the need to advance considerations of compensation and deterrence.  *Id*. at 1033 n.19.  The Court addresses each in turn.

First, Mr. Kostroun's claim is not frivolous.  Mr. Kostroun has had a copyright on the photograph since 2017.  Docket No. 1 at 3, ¶ 16.  Greenhouse does not have a license to use the photograph, and it never sought a license.  *Id*. at 1, ¶ 4.  Mr. Kostroun learned on April 11, 2022 that Greenhouse used the photograph without authorization, as evidenced by the online article incorporating the photograph.  *See id.* at 3 ¶¶ 24-25.

Second, there does not appear to be any improper motivation on behalf of Mr. Kostroun.  Mr. Kostroun brings a suit to assert his rights in his copyright for a

photograph he created as part of his professional portfolio.  *Id.* at 2-3, ¶¶ 10, 11, 17.

Upon discovering that Greenhouse was using the photograph without authorization, Mr.

Kostroun notified Greenhouse of the infringement.  *Id.* at 6, ¶ 48.  Mr. Kostroun waited

over a year to file suit, at which time Greenhouse had failed to respond to his letter.  *Id.*,

¶¶ 48-49.  The Court has no reason to doubt Mr. Kostroun's motivation, especially given

the valid grounds for the suit.  Third, Mr. Kostroun's suit is objectively reasonable.  As

discussed in regard to frivolousness, Mr. Kostroun had valid reason to believe that

Greenhouse used the photograph without authorization.

Fourth, considerations of compensation and deterrence lean in favor of attorney's

fees.  To ensure that Mr. Kostroun is compensated for pursuing this action against a

dilatory defendant, attorney's fees are appropriate.  *See Tague v. Mind Rocket, LLC*,

No. 20-cv-00230-REB-KLM, 2023 WL 11992382, at *3 (D. Colo. Mar. 1, 2023) ("Courts

in this district have routinely awarded costs and fees under § 505 as part of a default

judgment.")  A fee award would also serve to deter Greenhouse from continued

infringement.

To determine a reasonable fee request, a court must begin by calculating the

"lodestar amount."  *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998)

(discussing a reasonable attorney's fee under 42 U.S.C. § 1988(b)).  The lodestar

amount is the "number of hours reasonably expended on the litigation multiplied by a

reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  A party

seeking an award of attorney's fees must establish the reasonableness of each dollar

and each hour for which the party seeks an award.  *Jane L. v. Bangerter*, 61 F.3d 1505,

1510 (10th Cir. 1995).

A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002); *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996). The party requesting fees bears "the burden of showing that the requested rates are in line with those prevailing in the community." *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998). To satisfy his burden, Mr. Kostroun must produce "satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience[,] and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Mr. Kostroun seeks $735.00 in attorney's fees. Docket No. 14 at 1, ¶ 3. Mr. Kostroun attaches to his motion the affidavit of his attorney, Craig Sanders. Docket No. 14-2. Mr. Sanders states that he is a founding member and managing partner of Sanders Law Group, that his firm specializes in copyright enforcement of photographs and videos, and that he has more than thirty years of experience in the copyright field. *Id.* at 2-3, ¶ 13. Mr. Sanders claims that his hourly rate is $525. *Id.* Mr. Sanders asserts that his rates are consistent with those of the Colorado legal community because a court in this district has approved an hourly rate of $524.50 for an attorney with thirty years of copyright experience. *Id.* (citing *Stockart.com, LLC v. Engle*, No. 10-cv-00588-MSK-MEH, 2011 WL 10894610, at *17 (D. Colo. Feb. 18, 2011) ("Mr. Silverberg attests that he has been a copyright lawyer for approximately 30 years and charges an hourly rate of $524.50. He is a member and officer of local chapters and organizations devoted to graphic design and art, an author of published articles on

copyright law and legal aspects of the design and illustration industry, and an adjunct professor of law teaching in his field of expertise. . . .  The Court recommends that the District Court find Mr. Silverberg's hourly rate of $524.50 to be reasonable.")).  The Court agrees that Mr. Sanders' hourly rate is reasonable.  Mr. Sanders' rate is consistent with the reasonable hourly rate accepted in *Stockart.com*, which does not account for any inflation in the legal market over the past fourteen years.  *See Stockart.com*, 2011 WL 10894610, at *17.

In determining the reasonableness of the hours expended, a court considers several factors.  First, it considers whether the fees pertain to tasks that would ordinarily be billed to a client.  *See Ramos*, 713 F.2d at 554.  Mr. Kostroun must demonstrate that his counsel used "billing judgment" in winnowing down the hours actually spent to those reasonably expended.  *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005).  If not, a court should take extra care to ensure that an attorney has not included unjustified charges in his billing statement.  *Id.*  A court should also consider whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering.  *Id.*  Ultimately, the court's goal is to fix a fee that would be equivalent to what the attorney would reasonably bill for those same services in an open market.  *Ramos*, 713 F.2d at 555.

Mr. Kostroun seeks $735.00 in attorney's fees for 1.4 hours of work.  Docket No. 14-2 at 3.  Mr. Sanders claims that he spent 0.5 hours researching and drafting the complaint in this case, and that he spent 0.9 hours drafting the motion for default judgment, including the attorney declaration.  *Id.*  The Court finds that these are tasks

that would ordinarily be billed to a client and that the time spent on these tasks appears reasonable in light of the complexity of the case.  The Court finds that the proper lodestar amount of attorney's fees is $735.00.

Section 505, at the discretion of the Court, entitles Mr. Kostroun to "the recovery of full costs."  17 U.S.C. § 505.  In the motion for default judgment, Mr. Kostroun requests $440.00 in costs.  Docket No. 14 at 1.  In his affidavit, Mr. Sanders states that these costs include $400.00 for the court filing fee and $40.00 for the cost of serving Greenhouse.  Docket No. 14-2 at 3, ¶ 14.  These costs are appropriate to award to Mr. Kostroun, and the Court will award him $440.00 in costs.

### E.  Prejudgment Interest, Injunctive Relief, and Declaratory Judgment

Although Mr. Kostroun's complaint seeks prejudgment interest, neither Mr. Kostroun's motion for default judgment nor his supporting brief requests an award of prejudgment interest.  *See* Docket No. 1; Docket No. 14; Docket No. 14-1.  Therefore, the Court finds that Mr. Kostroun has abandoned a request for prejudgment interest. *See Interface Printers, LLC v. BGF Glob., LLC*, 2018 WL 3392103, at *1 (N.D. Tex. July 11, 2018) (accepting the magistrate judge's recommendation to not award plaintiff prejudgment interest because, "while Plaintiff requested prejudgment interest in its pleadings, its motion [for default judgment] does not include a request for prejudgment interest").  For the same reasons, the Court finds that Mr. Kostroun has abandoned a request for a declaratory judgment and injunctive relief.

In his motion for default judgment, Mr. Kostroun requests that the Court "retain jurisdiction over any matter pertaining to this judgment."  Docket No. 14 at 2.  Pursuant to this Court's practice standards, "the Court will not retain jurisdiction" except in "extraordinary circumstances."   Practice Standards (Civil Cases), Chief Judge Philip A.

Brimmer, § I.H.5 ("Any motion or stipulation for dismissal requesting that the Court retain jurisdiction after dismissal shall explain in detail the extraordinary circumstances necessitating such an approach.").  Mr. Kostroun has made no showing of extraordinary circumstances requiring the Court to retain jurisdiction over this case.  Therefore, the Court denies Mr. Kostroun's request for the Court to retain jurisdiction.

## IV.  CONCLUSION

Therefore, it is

**ORDERED** that Plaintiff's Amended Motion for Default Judgment [Docket No. 14] is **GRANTED**.  It is further

**ORDERED** that judgment shall enter in favor of plaintiff William Kostroun and against defendant Greenhouse Partners, LLC for statutory damages of $7,500.  It is further

**ORDERED** that defendant Greenhouse Partners, LLC shall pay plaintiff William Kostroun $735.00 in attorney's fees and $440.00 in costs.  It is further

**ORDERED** that this case is closed.

DATED August 13, 2025

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge